Keith A. Krauss, Esq. (022461978)
Charles J. Messina, Esq. (022062008)
Matthew I. W. Baker, Esq. (053092013)
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
*Attorneys for Plaintiff,*
*Timothy Dwyer*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY J. DWYER,<br><br>          Plaintiff,<br><br>     v.<br><br>CAPITAL INVESTORS MANAGEMENT LLC, SHUVAM BHAUMIK and VIRJU PATEL<br><br>          Defendants. | Civil Action No.:<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Timothy J. Dwyer ("Plaintiff" or "Dwyer"), by way of Complaint against

defendants, Capital Investors Management LLC ("CIM"), Shuvam Bhaumik ("Bhaumik") and

Virju Patel ("Patel" and, collectively with Bhaumik and CIM, "Defendants"), alleges as follows:

### IDENTIFICATION OF PARTIES (Local Civil Rule 10.1)

1.      The names and addresses of the named parties to this action are as follows: (i)

Timothy J. Dwyer, 8 Fairway Drive, Whitehouse Station, New Jersey 08889; (ii) Capital Investors

Management LLC, 38 Mountain View Lane, Schwenksville, Pennsylvania 19473; (iii) Shuvam

Bhaumik, 950 Broadway, Loft 11, Chelsea, Massachusetts 02150; and Virju Patel, 38 Mountain

View Lane, Schwenksville, Pennsylvania 19473.

## INTRODUCTION

2.      This is an action brought by Plaintiff, an investor, against Defendants, who jointly induced Plaintiff to invest in two limited liability companies under Defendants' control and purportedly formed for the purpose of purchasing two residential properties located in Chicago, Illinois.  After inducing Plaintiff to invest, Defendants then, upon information and belief, secretly funneled Plaintiff's investment into Equitybuild, Inc. ("EBI")[1], a separate entity previously unknown to Plaintiff that not only did not purchase either of the originally contemplated residential properties, but also that is currently being sued by the U.S. Securities and Exchange Commission ("SEC"), has been alleged by the SEC to be an "ongoing Ponzi scheme," and is in receivership (the "Receivership Action").  Defendants have further attempted to conceal their fraud and mislead Plaintiff by sending Plaintiff ongoing communications, including pleadings and information regarding the Receivership Action, intentionally attempting to mislead Plaintiff into inaction  by falsely claiming that Plaintiff and the other investors have a stake in and will receive some compensation out of the Receivership Action, when in reality Plaintiff has no stake in the Receivership Action.

## PARTIES

3.      Plaintiff Dwyer is an individual and resident of the state of New Jersey.

---

[1] Defendants also may have funneled Plaintiff's investment to other persons and entities presently unknown to Plaintiff.

4.      CIM is a limited liability company domiciled, and with its principal place of business, in Pennsylvania.

5.      Bhaumik and Patel are the Managing Members of CIM.

6.      Upon information and belief, Bhaumik is an individual and resident of the state of Massachusetts.

7.      Upon information and belief, Patel is an individual and a resident of the commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

9.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

10.     This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) inasmuch as such claims are related to Plaintiff's federal-law claims and form part of the same case or controversy.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in the District of New Jersey.

## FACTS

### A.  DEFENDANTS INDUCE PLAINTIFF TO INVEST IN THE FUNDS.

12.     As of late 2017 and early 2018, Patel was employed as an engineer by an information technology company owned by the Plaintiff.

13.     At around this time, Patel introduced Plaintiff to Bhaumik, representing to Plaintiff that Bhaumik was one of Patel's business partners in CIM, an investment entity separate from Patel's employment with Plaintiff's company.

14.     Patel represented to Plaintiff that Bhaumik was the successful operator of a private family office – i.e., a holding company that manages all of a family's financial assets, interests, and investments – that managed over $800,000,000 in assets for a wealthy family that Bhaumik originally met through golfing at the Charles River Country Club in Massachusetts.  Bhaumik also repeated this claim to Plaintiff on numerous occasions over the ensuing months.

15.     Patel and Bhaumik also represented to Plaintiff that they were interested in investing in apartment buildings in Chicago, IL, through CIM.

16.     Patel and Bhaumik also repeatedly claimed to Plaintiff that Bhaumik and his family owned and operated a portfolio of 1,500-2,000 apartment buildings in Brooklyn, NY. These claims were made in order to establish the Defendants' credibility to Plaintiff and purported status as an experienced, capable, successful and expert owner, operator and investor in urban, residential apartment properties.

17.     Patel and Bhaumik further represented to Plaintiff that Bhaumik had investments in apartment complexes in Chicago, had relationships with people "on the ground" there, was

planning on acquiring additional apartment properties in Chicago, and was seeking investors for such opportunities.

18.     At some point in or about the Spring of 2018, Defendants approached Plaintiff with an opportunity for Plaintiff to invest in Chicago-area real estate, specifically, a property located at 6951 South Merrill Avenue, Chicago, IL 60649 (the "South Merrill Avenue Property").

19.     Specifically, the Defendants proposed that Plaintiff invest funds in a special-purpose limited liability company, which: (i) would acquire title to the South Merrill Avenue Property; and (ii) would also purchase a controlling interest in another special purpose entity which would acquire another property in Chicago, 5001 South Drexel Boulevard, Chicago, IL 60615 (the "South Drexel Boulevard Property" and, collectively with the South Merrill Avenue Property, the "Properties").

20.     Defendants provided Plaintiff with written materials such as color glossy sales brochures about the Properties which included photos and rental and income information, including rent rolls, an investment analysis, and a pitch deck.

21.     In order to induce Plaintiff to invest in the Project, among other things, Defendants told Plaintiff that he would receive an 8% guaranteed preferred return on his investment, payable monthly, that a refinance of the Properties was in process, that the refinancing would close within 90 days and would result in available cash, and that upon closing, Plaintiff would retain his membership interest in the entities owning and managing the Properties and continue his preferred 8% returns and could elect to receive a full return of his initial capital investment or could elect to "roll it over" into another project. Defendants repeated these claims throughout the course of their transaction.

22.     One such special-purpose limited liability company was 6951 South Merrill Fund I, LLC (the "South Merrill Fund"), which is governed by an Operating Agreement ("South Merrill Fund Agreement").  A true and accurate copy of the South Merrill Fund Agreement is attached hereto as Exhibit A.

23.     Section 2.1 of the South Merrill Fund Agreement provides, in part, that the South Merrill Fund is a "Member Managed limited liability company," and that the "Managing Member of the Company is Capital Investors Management, LLC, a Pennsylvania limited liability company."

24.     Section 2.3 of the South Merrill Fund Agreement provides, in part, that the South Merrill Fund's principal place of business would be 38 Mountain View Lane, Schwenksville, Pennsylvania 19473, the same address of CIM's principal place of business.

25.     Section 2.2 of the South Merrill Fund Agreement provides, in part, that the purpose of the South Merrill Fund is, among other things: "(1) to acquire the real estate property commonly known as 6951 S. Merrill Avenue, Chicago, IL 60649 (herein [known] as the 'Property') and other real estate properties; [and] (2) to own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with the Property[.]"

26.     Section 6.2 of the South Merrill Fund Agreement provides as follows:

> Information.  Any Member may obtain from the Company from time to time, upon reasonable demand for any purpose reasonably related to such Member's interest as a member, (a) true and full information regarding the state of the business and financial condition of the Company and any other information regarding the affairs of the Company, including, without limitation, information regarding potential leases, sales and refinancing, and (b) promptly after becoming available, a copy of the Company's federal, state, and local income tax returns for each Fiscal Year. The Managing Member shall also prepare or cause to be prepared and distributed to the Members, not less frequently than quarterly, a report of

6

the affairs of the Company, including without limitation, leasing activities, income and expenses, result of operations and such other information as may be reasonably requested by a Member.

27.     The other special-purpose limited liability company was 5001 South Drexel Blvd Fund II, LLC (the "South Drexel Fund", and collectively with the South Merrill Fund, the "Funds"), which is also governed by an Operating Agreement (the "South Drexel Fund Agreement", and collectively with the South Merrill Fund Agreement, the "Fund Agreements"). A true and accurate copy of the South Drexel Fund Agreement is attached hereto as Exhibit B.

28.     Section 2.1 of the South Drexel Fund Agreement provides, in part, that the South Drexel Fund is a "Member Managed limited liability company," and that the "Managing Member of the Company is Capital Investors Management, LLC, a Pennsylvania limited liability company."

29.     Section 2.3 of the South Drexel Fund Agreement provides, in part, that the South Drexel Fund's principal place of business would be 38 Mountain View Lane, Schwenksville, Pennsylvania 19473, the same address of CIM's principal place of business.

30.     Section 2.2 of the South Drexel Fund Agreement provides, in part, that the purpose of the South Drexel Fund is, among other things: "(1) to acquire the real estate property commonly known as 5001 SOUTH DREXEL BLVD Chicago, IL 60615 (herein [known] as the 'Property') and other real estate properties; [and] (2) to own, hold, sell, assign, transfer, operate, lease, mortgage, pledge and otherwise deal with the Property[.]"

31.     Section 6.2 of the South Drexel Fund Agreement provides as follows:

> Information.  Any Member may obtain from the Company from time to time, upon reasonable demand for any purpose reasonably related to such Member's interest as a member, (a) true and full information regarding the state of the business and financial condition of the Company

and any other information regarding the affairs of the Company, including, without limitation, information regarding potential leases, sales and refinancing, and (b) promptly after becoming available, a copy of the Company's federal, state, and local income tax returns for each Fiscal Year. The Managing Member shall also prepare or cause to be prepared and distributed to the Members, not less frequently than quarterly, a report of the affairs of the Company, including without limitation, leasing activities, income and expenses, result of operations and such other information as may be reasonably requested by a Member.

32.    During the Summer of 2018, based on representations made by Bhaumik and Patel that the South Merrill Fund would acquire title to the South Merrill Avenue Property, and that the South Drexel Fund would acquire title to the South Drexel Boulevard Property, Plaintiff invested $700,000.00 in, and became a Member of, the South Merrill Fund, and approved of, and relied upon, the South Merrill Fund's subsequent investment in the South Drexel Fund.

33.    Specifically, Plaintiff sent two payments by wire – one payment of $200,000 in June 2018 and one of $500,000 in July 2018 – to CIM, and executed the South Merrill Fund Agreement.

34.    Plaintiff's was the largest individual investment in the South Merrill Fund, and he became an owner with a 39.34% membership interest therein. .

35.    Also, upon information and belief, on or about July 24, 2018, the South Merrill Fund invested approximately $200,000.00 of its funds in, and became a Member of, the South Drexel Fund.

36.    As a result of its investment, the Plaintiff was told that South Merrill Fund became a 9.16% owner of the South Drexel Fund.

## B. **DEFENDANTS' SCHEME BEGINS TO UNRAVEL.**

37.     Sometime around May of 2019, Plaintiff began receiving emails from Bhaumik with status summaries relative to the Receivership Action, including documents, such as motions and receiver's reports, in connection therewith.

38.     These communications identified entities other than the Funds, including Capital Investors LLC and EBI, which had never previously been disclosed to Plaintiff and of which Plaintiff had never heard, as having an interest the Properties and as having filed claims and having some sort of stake in the Receivership Action.

39.     There was no indication and, as more particularly described below, Plaintiff has been unable to independently find any evidence that the Funds have any claim in the Receivership Action or any stake therein.  The communications from Bhaumik were false and misleading and represent further acts to perpetuate Defendants' fraud upon the Plaintiff.

40.     At around this time, Bhaumik became increasingly desperate to cover up Defendants' scheme and prevent Plaintiff from uncovering Defendants' misconduct.

41.     For example, Bhaumik provided Plaintiff with a "Notification of Electronic Deposit", dated October 1, 2019, that purported to show Plaintiff's two wire payments to CIM totaling $700,000, along with a notation reading "Interest @ 8% . . . $56,000" as an attempt to mislead Plaintiff into believing that Plaintiff's investment had generated $56,000 in interest for the Plaintiff, coincidentally equal to the promised $8% preferred return on Plaintiff's $700,000 investment, and that Defendants would pay that amount to Plaintiff.

42.     Defendants also continued to claim to Plaintiff that Plaintiff would recoup his investment within a short time period once the refinance transaction had closed, and that Plaintiff

would maintain his equity position in the South Merrill Fund and have the opportunity to re-invest his returns in additional properties to be purchased by the Funds.

43.    Also at around this time, Bhaumik asked Plaintiff to invest additional money in the Funds.  To support this request, Bhaumik provided Plaintiff with an alleged statement from an investment account with Fidelity Investments in Bhaumik's name that purported to show over $1.4 million in the account.  Bhaumik pledged the contents of this account as collateral for any further investments from Plaintiff in the Funds.

44.    After receiving the so-called latest motion in the Receivership Action from Bhaumik, by email dated December 5, 2019, Plaintiff wrote to Bhaumik, asking for clarification and how the Receivership Action related to the South Merrill Avenue Property:

> "I read through the receivership update and had a few questions ?I did not see the property that I'm invested in, Merrill on here and not sure why I'm connected to an SEC directed Ponzi scheme ?Where is the $ 700 K that I invested if Merrill is not named as part of this receivership ?Is Merrill currently for sale ? In receivership ? and if so, why ? Isn't there sufficient tenants in this building that are paying rents ?  Did all tenants of Merrill move out ?  please advise….thanks"

45.    Thereafter, when Defendants could not explain any connection between the South Merrill Fund and the Receivership Action, or explain where Plaintiff's investment money had gone, Plaintiff wrote to Defendant and demanded a refund of his investment. Defendants did not respond.

46.    When a subsequent title search revealed that neither of the Funds ever had title to either of the Properties, Plaintiff's counsel wrote to Bhaumik demanding documents required to be provided to Plaintiff, as a member of the Funds, upon request under Section 6.2 of the Fund Agreements, and other documents concerning the Properties, EBI and where Plaintiff's investment monies had gone.

10

47.     Specifically, by letter dated August 12, 2020, Plaintiff requested:

(a)     "full and true information regarding the state of the business and financial condition of the 6951 Fund and the 5001 Fund and any other information regarding the affairs of the 6951 Fund and the 5001 Fund, including, without limitation, information regarding potential leases, sales and refinancing, financial statements, statements of profit and loss, information regarding the purchase and/or sale of the real property and improvements located at 6951 South Merrill Avenue, Chicago, Illinois (the "6951 Property") and 5001 South Drexel Boulevard, Chicago, Illinois (the "5001 Property", together with the 6951 Property, the "Properties"), and the disposition of the net sales proceeds (or planned disposition of the net sales proceeds) thereof, and bank statements for any and all bank accounts in the name of the 6951 Fund, the 5001 Fund, and Capital Investors Management LLC ("CIM"), and/or otherwise related to any of the foregoing;"

(b)     "copies of each federal, state and local tax return prepared and/or filed for the 6951 Fund and/or the 6951 Property and the 5001 Fund and/or the 5001 Property for each fiscal year of existence of the 6951 Fund and the 5001 Fund and ownership of the 6951 Property and the 5001 Property;" and

(c)     "all quarterly reports prepared and/or sent to the members of the 6951 Fund and the 5001 Fund, respectively, per the requirements of Section 6.2 of the limited liability company agreements for the 6951 Fund and the 5001 Fund, respectively."

48.     Defendants failed to respond to Plaintiff's August 12, 2020, request or otherwise furnish Plaintiff with the requested information .

49.     Plaintiff made a second request to Defendants for this information by letter dated October 22, 2020.

50.      In response to Plaintiff's October 22, 2020, request, Defendants again failed to furnish Plaintiff with the requested information.

51.     Plaintiff made a third request to Defendants for this information on or about March 23, 2021.

52.     In response to Plaintiff's March 23, 2021, request, Defendants again failed to furnish Plaintiff with the requested information.

53.    What little information Defendants have provided to Plaintiff regarding the status of the Funds suggests that, instead of purchasing the Properties, both of the Funds secretly invested substantial amounts of their funding in EBI.

54.    Upon information and belief, including court filings in the matter of U.S. Securities and Exchange Commission v. EquityBuild, Inc., et al., Dkt. No. 18-cv-5587, currently pending in the United States District Court for the Northern District of Illinois, EBI and its affiliate entity EquityBuild Finance, LLC, were sham real estate investment entities owned and controlled by Jerome H. Cohen and Shaun D. Cohen, which defrauded investors by promising safe investments and high returns, secured by income-producing residential properties on the South Side of Chicago – where the Properties at issue here are located – only to exaggerate property values, extract hidden and undisclosed fees, and eventually implement a Ponzi scheme whereby earlier investors could only be paid out by using funds raised from unwitting new investors.

55.    Upon information and belief, the South Merrill Fund never purchased the South Merrill Avenue Property, and the South Drexel Fund never purchased the South Drexel Boulevard Property.

56.    Title searches performed for each of the Properties did not show either of the Funds in the chain of title for either of the Properties.

57.    Upon information and belief, CIM, as the Managing Member of both Funds, never intended for the Funds to actually purchase the Properties, but instead induced Plaintiff and other investors to invest in the Funds so that CIM, as the Managing Member of both Funds, could then invest the Funds' capital in EBI.

58.     At the time of his investment in the Funds, Plaintiff knew nothing about EBI, and EBI's existence and potential or actual involvement in the Funds' business transactions were not disclosed to Plaintiff in any way by Bhaumik, Patel, CIM or by anyone else.

## COUNT ONE (FRAUDULENT INDUCEMENT)

59.     Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

60.     In order to effect the above referenced scheme, Defendants made material misrepresentations and omissions to Plaintiff.

61.     Specifically, Bhaumik and Patel, individually and on behalf of CIM – of which both Bhaumik and Patel arethe Managing Members – represented and warranted to Plaintiff that Plaintiff's investment in the Funds would be used by the Funds to purchase the Properties.

62.     Upon information and belief, these representations were intentionally and knowingly false, and Defendants never intended to use Plaintiff's investment in the Funds to purchase the Properties.

63.     Instead, upon information and belief, Defendants intended from the outset to have the Funds invest in EBI, and not to purchase the Properties.

64.     In addition, Defendants omitted disclosing any information or detail regarding EBI, or its actual or potential involvement in the Funds' business transactions to Plaintiff as of the time of Plaintiff's investment in the Funds and until long after the Receivership action had commenced and only after repeated inquiries by Plaintiff..

65.     Defendants' misrepresentations and omissions were made knowingly and with the intent that Plaintiff rely on them, in the form of investing $700,000.00 in the Funds and constitute fraud .

66.     Plaintiff justifiably relied on Defendants' misrepresentations and omissions by investing $700,000.00 in what Plaintiff believed to be reputable, single-purpose limited liability companies governed by the Fund Agreements, and managed by CIM.

67.     Plaintiff's reliance on Defendants' misrepresentations and omissions have damaged him in an amount to be determined at trial.

## COUNT TWO (NEGLIGENT MISREPRESENTATION)

68.     Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

69.     Defendants made false and incorrect statements to Plaintiff.

70.     Specifically, Bhaumik and Patel, individually and on behalf of CIM – of which both Bhaumik and Patel are the Managing Members – represented to Plaintiff that Plaintiff's investment in the Funds would be used to help the Funds purchase the Properties.

71.     Upon information and belief, these representations were intentionally and knowingly false, and Defendants never intended to use Plaintiff's investment in the Funds to purchase the Properties.

72.     Instead, upon information and belief, Defendants intended from the outset to have the Funds invest in EBI, and not to purchase the Properties.

73.     In addition, Defendants omitted disclosing any information or detail regarding EBI, or its actual or potential involvement in the Funds' business transactions to Plaintiff as of the time of Plaintiff's investment in the Funds and until long after the Receivership Action had commenced and only after repeated inquiries by Plaintiff..

14

74.     Even in the event that Defendants did not intend to make such false representations and omissions, Defendants nevertheless made such representations and omissions negligently and without due care.

75.     Defendants' misrepresentations and omissions were made with the intent that Plaintiff rely on them, in the form of investing $700,000.00 in the Funds.

76.     Plaintiff justifiably relied on Defendants' misrepresentations and omissions by investing $700,000.00 in what Plaintiff believed to be reputable, single-purpose limited liability companies governed by the Fund Agreements, and managed by CIM.

77.     Plaintiff's reliance on Defendants' misrepresentations and omissions have damaged him in an amount to be determined at trial.

## COUNT THREE (BREACH OF CONTRACT)

78.     Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

79.     The South Merrill Fund Agreement is a valid and enforceable agreement entered into by and between Plaintiff and CIM.

80.     Plaintiff fully performed all of his contractual obligations under the South Merrill Fund Agreement.

81.     CIM breached the South Merrill Fund Agreement by, upon information and belief, operating the South Merrill Fund in derogation of its stated purpose, which was to acquire title to the South Merrill Avenue Property.

82.    CIM failed to fulfill its contractual obligation to cause the South Merril Fund to acquire the South Merrill Avenue Property, and instead caused the South Merrill Fund to invest its funding in EBI. Said conduct is a breach of the South Merrill Fund Agreement.

83.    CIM also breached the South Merrill Fund Agreement by failing to provide Plaintiff with the information he requested, or that CIM was otherwise required to produce, pursuant to Section 6.2 of that agreement.

84.    As a result of CIM's breaches of the South Merrill Fund Agreement, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT FOUR (BREACH OF FIDUCIARY DUTY)

85.    Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

86.    As the Managing Member of the South Merrill Avenue Fund, CIM owed Plaintiff fiduciary duties, including the duty to act with the utmost good faith and loyalty.

87.    CIM breached its fiduciary duties by, upon information and belief, causing  the South Merrill Fund to invest in EBI instead of purchasing the South Merrill Avenue Property.

88.    CIM also breached its fiduciary duties by failing to provide Plaintiff with the information he requested, or that CIM was otherwise required to produce, pursuant to Section 6.2 of the South Merrill Fund Agreement.

89.    CIM's conduct in breaching its fiduciary duties to Plaintiff has damaged him in an amount to be determined at trial.

16

## COUNT FIVE (FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(c))

90.     Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

91.     Patel, Bhaumik and CIM are all "persons" as that term is defined in 18 U.S.C. § 1961(3).

92.     Bhaumik, CIM, Patel, and certain other individuals and entities that were involved in soliciting investors for the Funds, in promoting the Properties as targets to be purchased by the Funds, and in facilitating the Funds' eventual investments in EBI instead of in the Properties, constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

93.     Bhaumik, CIM, Patel, and certain other individuals and entities that were involved in soliciting investors for the Funds, in promoting the Properties as targets to be purchased by the Funds, and in facilitating the Funds' eventual investments in EBI instead of in the Properties, were associated together in an ongoing organizational form from no later than the spring of 2018 through the present, with the common purpose of facilitating the Funds' investments in EBI.

94.     The enterprise had an existence separate and apart from the pattern of racketeering, and functioned as a continuing unit with a hierarchical decision-making structure, with Bhaumik and Patel as leaders, and other individuals and entities below them.

95.     The enterprise engaged in activities that affect interstate commerce, namely the coordination of investment in two Pennsylvania-based limited liability companies, ostensibly formed for the purpose of investing in residential real estate in Chicago, IL, and by investors living in places such as New Jersey, like Plaintiff.

96.    Upon information and belief, Bhaumik supervised and controlled the enterprise, and participated in the conduct of the affairs of the enterprise by, among other things, making material misrepresentations and omissions to Plaintiff, directly engaging in the solicitation of other investors for the Funds and in the construction of the Funds themselves, secretly directing, thorough CIM, the Funds to invest in EBI, and by refusing to timely provide Member-requested documentation and information.

97.    In connection with and in furtherance of the various improper transactions that Defendants induced, facilitated, or directed, Defendants transmitted or caused to be transmitted multiple communications by means of wire (including telephone calls, faxes, or e-mails) and/or mail for the purpose of executing the above-described scheme in violation of 18 U.S.C. §§ 1341 and 1343, which qualify as predicate "racketeering activity" under 18 U.S.C. § 1961(1). Such wire and/or mail communications include, but are not limited to, e-mails sent by Bhaumik and Patel to Plaintiff to procure Plaintiff's investment in the Funds, and the use of an electronic document-execution service or application between July and September 2018 through which Plaintiff, Bhaumik, and Patel each reviewed and executed the South Merrill Fund Agreement.

98.    For purposes of this action, by transmitting or causing to be transmitted communications by wire and/or mail in furtherance of the above-described scheme on more than one occasion in the past ten years, Bhaumik, Patel and CIM participated in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

99.    As a result of the pattern of racketeering activity in which Defendants participated, Plaintiff has suffered damages to be determined at trial.

## COUNT SIX (FEDERAL RICO, 18 U.S.C. § 1962(d))

100.    Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

101.    At all relevant times, Defendants were associated with the enterprise and agreed and conspired with each other and other individuals and entities to violate 18 U.S.C. § 1962(c), which itself is an independent violation of 18 U.S.C. § 1962(d).

102.    Defendants, with other individuals and entities, agreed to further the real estate investment scheme described above by, inter alia, engaging in the pattern of racketeering described herein.

103.    In furtherance of this conspiracy, Defendants committed or caused to be committed several overt acts, including but not limited to: sending the electronic communications described above, electronically executing the Fund Agreements as described above, and refusing to disclose certain information related to the Funds' financial status upon request in order to cover-up the illicit scheme.

104.    As a result of the conspiracy to violate 18 U.S.C. § 1962(c), Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT SEVEN (CONVERSION)

105.    Plaintiff hereby incorporates all foregoing paragraphs of this Complaint.

106.    Plaintiff is the rightful owner of, and enjoyed the right to immediate possession of, the two wire payments he made to CIM totaling $700,000.

107.    CIM, and Bhaumik and Patel as the managing members thereof, wrongfully interfered with the property rights Plaintiff held in his $700,000 payments, and have wrongfully

exercised dominion and control over such payments, by inducing Plaintiff to make these payments based on false and fraudulent misrepresentations.

108.    Because Plaintiff's $700,000 payments were obtained through fraud, Defendants never obtained a right to exercise dominion or control over the payments.

109.    Therefore, Defendants have converted Plaintiff's payments totaling $700,000.

**WHEREFORE**, Plaintiff requests the following relief:

(a)    Entry of judgment in his favor;

(b)    Actual, compensatory, incidental, consequential, and punitive damages as described herein and in an amount to be established at trial;

(c)    An award of the costs of this action; and

(d)    Such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 2, 2022    By:    /s/ Matthew I. W. Baker, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
mbaker@genovaburns.com
*Attorneys for Plaintiff,*
*Timothy J. Dwyer*

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury as to all issues so triable.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to L. CIV. R. 11.2, the undersigned counsel for Plaintiff hereby certifies that this matter in controversy is not the subject of any action pending in any court, or of any pending arbitration or administrative proceeding.

## LOCAL CIVIL RULE 201.1(d)(3) CERTIFICATION

Pursuant to L. CIV. R. 201(d)(3), the undersigned counsel for Plaintiff hereby certifies that the amount in controversy exceeds $150,000.00.

Dated: January 2, 2023       By:       /s/Matthew I. W. Baker, Esq.
**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
mbaker@genovaburns.com
*Attorneys for Plaintiff,*
*Timothy J. Dwyer*