NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY J. DWYER,<br><br>        Plaintiff,<br><br>  v.<br><br>CAPITAL INVESTORS MANAGEMENT LLC, SHUVAM BHAUMIK, and VIRJU PATEL,<br><br>        Defendants,<br><br>and<br><br>VIRJU PATEL,<br><br>        Cross claimant,<br><br>  v.<br><br>SHUVAM BHAUMIK and CAPITAL INVESTORS MANAGEMENT LLC,<br><br>        Cross defendants. | Civil Action No. 23-00003 (GC) (DEA)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Defendants Capital Investors Management, LLC (CIM) and Shuvam Bhaumik's ("Moving Defendants") two motions to stay or, alternatively, dismiss. (ECF Nos. 16 & 19.) The first motion (ECF No. 16) targets Plaintiff Timothy J. Dwyer's complaint (ECF No. 1). The second motion (ECF No. 19) targets the crossclaims of Defendant Virju Patel (ECF No. 13). Dwyer opposed both motions (ECF No. 26), and Patel joined in the Moving Defendants' motions to stay (ECF No. 18) and opposed Defendants' motion to dismiss

crossclaims (ECF No. 25).  The Moving Defendants replied.  (ECF Nos. 27 & 28.)  The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, both motions to stay are **GRANTED**.

I.      BACKGROUND

In a seven-count complaint, Dwyer asserts claims for fraudulent inducement (Count One); negligent misrepresentation (Count Two); breach of contract (Count Three); breach of fiduciary duty (Count Four); violations of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d) (Counts Five and Six)[1]; and conversion (Count Seven).  (*See generally* ECF No. 1.)  Patel asserts crossclaims for fraudulent inducement and misrepresentation against Bhaumik (Crossclaim One), negligent misrepresentation against CIM and Bhaumik (Crossclaim Two), breach of fiduciary duty against Bhaumik (Crossclaim Three), fraudulent inducement against Bhaumik (Crossclaim Four), breach of contract against Bhaumik (Crossclaim Five), breach of the implied covenant of good faith and fair dealing against Bhaumik (Crossclaim Six), contribution and indemnification against CIM and Bhaumik (Crossclaim Seven), and unjust enrichment against Bhaumik (Crossclaim Eight).  (*See generally* ECF No. 13.)

A.      **Dwyer's Complaint**

Dwyer resides in New Jersey.  (ECF No. 1 ¶ 3.)  CIM is an investment LLC based in Pennsylvania.  (ECF No. 1 ¶¶ 1, 4.)  Dwyer alleges Bhaumik and Patel are the managing members of CIM.  (*Id.* ¶ 5.)  Dwyer alleges that Patel worked as an engineer with Dwyer's IT company.  (*Id.*

---

[1]     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

¶ 12.) Around late 2017 or early 2018, Patel introduced Dwyer to Bhaumik, who Patel told Dwyer was one of his business partners in CIM, an investment entity. (*Id.* ¶ 13.)[2]

Dwyer's action arises from his investing $700,000 in two installments — $200,000 in June 2018 and $500,000 in July 2018 — in two Pennsylvania special-purpose limited liability companies through CIM, the managing member of both companies. (ECF No. 1 ¶¶ 32-33; ECF Nos. 1-1 § 2.1; ECF No. 1-2 § 2.1.) The two companies, or Funds, were 6951 South Merrill Fund I, LLC, and 5001 South Drexel Blvd Fund II, LLC. (ECF No. 1 ¶¶ 22, 27.) According to their operating agreements, the Funds were purposed to purchase their namesake properties in Chicago, Illinois. (ECF No. 1 ¶¶ 18-19, 25, 30; ECF No. 1-2 § 2.2; ECF No. 1-3 § 2.2.) Dwyer's $700,000 was invested in the South Merrill Fund, giving Dwyer a 39.34% membership interest. (ECF No. 1 ¶¶ 32, 34.) The South Merrill Fund then invested $200,000 in the South Drexel Fund, giving the South Merrill Fund a 9.16% membership interest. (*Id.* ¶¶ 35-36.)

Dwyer alleges that to induce him to invest in the Funds, Bhaumik and Patel repeatedly told him that he would receive an 8% guaranteed preferred return on his investment, payable monthly; that a refinance of the Chicago properties was in process; that the refinancing would close within 90 days and result in available cash; and that upon closing, Dwyer would retain his membership interest in the entities owning and managing the properties, he would continue to receive his preferred 8% returns, and he could elect to receive a full return of his initial investment or "roll it over" into another project. (ECF No. 1 ¶ 21.)

In May 2019, almost a year later, Bhaumik began emailing Dwyer status summaries related to a receivership action pending in the United States District Court for the Northern District of Illinois. (ECF No. 1 ¶ 37; *see* ECF 16-2 (Order Appointing Receiver, *S.E.C. v. Equitybuild, Inc.*,

---

[2]    Patel says his membership in CIM ended in January 2019. (ECF No. 13 at 17.)

*et al.*, Civ. No. 18-5587 (N.D. Ill. Aug. 17, 2018), ECF No. 16 ("Receivership Action")).) The Illinois district court entered an order on August 17, 2018 ("Receivership Order"), on an emergency motion by the Securities and Exchange Commission, appointing a receiver to "marshal[] and preserv[e] all assets of Defendants Equitybuild, Inc., Equitybuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen." (ECF No. 16-2 at 4.[3]) Among the Receivership Defendants are "5001 S Drexel LLC" and "6951 S Merrill LLC." (*Id.* at 5.) The namesake real estate properties, 5001 S. Drexel Blvd. and 6951 S. Merrill Ave., are Receivership Assets being managed and disposed of by the Receiver. (*Equitybuild*, Civ. No. 18-5587 (N.D. Ill.), ECF Nos. 164, 1560.) The Receivership Action and its parent case are ongoing. Bhaumik's communications identified entities other than the Funds — none of which Dwyer had ever heard of — as having interest in the Chicago properties and claims in the Receivership Action. (ECF No. 1 ¶ 38.) Dwyer saw no indication that the Funds had any claim in the Receivership Action. (*Id.* ¶ 39.)

Later in 2019, Dwyer alleges, Bhaumik tried to cover up his and Patel's "scheme," providing Dwyer with an electronic receipt for two wire payments totaling $700,000 with notations of 8% interest earned and repeating some of their promises of returns and reinvestments. (ECF No. 1 ¶¶ 40-42.) Bhaumik also asked Dwyer to invest more money in the Funds, collateralized by funds that Bhaumik held in a separate account. (*Id.* ¶ 43.)

By email in December 2019, Dwyer asked Bhaumik how the Receivership Action concerned the South Merrill property. (ECF No. 1 ¶ 44.) Unsatisfied with the lack of explanation, Dwyer demanded a refund of his investment. (*Id.* ¶ 45.) Bhaumik and Patel did not respond. (*Id.*)

---

[3]   Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Dwyer conducted a title search and confirmed that neither of the Funds ever had title to either of the named properties. (*Id.* ¶¶ 46; 55-56.) Then, by letter in August 2020, Dwyer's counsel requested that Bhaumik and Patel furnish records reflecting the "state of the business and financial condition of" the Funds, to which Dwyer was entitled under the operating agreements. (*Id.* ¶¶ 46-47; ECF No. 1-1 § 6.2; ECF No. 1-2 § 6.2.) Bhaumik and Patel did not respond. (ECF No. 1 ¶ 48.) Dwyer made two more requests, in October 2020 and March 2021. And still, Bhaumik and Patel did not furnish the requested information. (*Id.* ¶¶ 49-52.)

Dwyer alleges, on information and belief, that "both of the Funds secretly invested substantial amounts of their funding" in one of the Equitybuild defendants in the Receivership Action. (ECF No. 1 ¶ 53.) Dwyer further alleges that CIM induced him and other investors to invest in the funds "so that CIM . . . could then invest the Funds' capital in [Equitybuild]" and that CIM "never intended for the Funds to actually purchase the Properties." (*Id.* ¶ 57.)

### B. Patel's Crossclaims

Patel's crossclaims allege that Bhaumik, who claimed to have "extensive experience" managing millions in assets, pitched Patel the Equitybuild investment model as a "crowdfunding investor" with 1,800 to 2,000 units in Chicago and "a lot of upside," potentially a 15 to 20% rate of return. (ECF No. 13 ¶¶ 6-8.[4]) Bhaumik often touted his claimed experience to induce investors, including Patel's family and friends, to invest. (*Id.* ¶ 9.) Moved by Bhaumik's success stories, as well as his continued pressure, Patel agreed to help Bhaumik market investment opportunities, first

---

[4] Patel filed a combined answer and crossclaim at ECF No. 13, with paragraph numeration restarting for the crossclaim on page 17. (*See* ECF No. 13 at 17.) Unless noted otherwise, citations to ECF No. 13 refer to Patel's crossclaims, not his answer.

using Capital Investors LLC (CI)[5] for debt investments, and later using CIM for equity investments. (*Id.* ¶¶ 9-10.)

Patel alleges that CI offered clients "different real estate investment opportunities" that "shared the same essential characteristics": each involved an "outside third-party entity seeking to borrow funds in a debt arrangement to aid the development/acquisition of a real estate project, in the form of a note (debt) secured by the real estate being developed/acquired by the outside third-party entity"; "[e]ach note would be secured by a first lien position security interest in the subject property"; and each "investment opportunity . . . would be completed on an individual basis with its own limited liability company and an operating agreement for the limited liability company." (ECF No. 13 ¶¶ 11-12.) CIM, which came later, worked similarly. Only instead of debt investments, CIM acquired equity in real estate development or acquisition projects. (*Id.* ¶ 13.)

Patel alleges that Equitybuild gathered debt tied to real estate and sold it to outside entities like CI, offering returns of 15 to 16% on the secured notes. (ECF No. 13 ¶ 15.) For CI's first Equitybuild-related property investment, called "Juneway," Patel invested $50,000 of his own money through CI and Equitybuild and raised $250,000 as a secured note, which Patel alleges CI still holds. Bhaumik did not contribute. (*Id.* ¶¶ 16-17.) Given the amount of capital CI raised, Equitybuild recommended that CI buy equity in the real estate, with an 8% preferred rate of return on investments plus other potential returns like rental income. And so, to accommodate the equity investment model, Bhaumik and Patel formed CIM, designating themselves as equal owners in the December 2017 Operating Agreement.[6] (*Id.* ¶¶ 10, 18.)

---

[5]     Patel alleges that CI was an existing entity that he had formed on his own previously. (ECF No. 13 ¶ 10.)

[6]     The CIM Operating Agreement is not part of the record.

6

Patel alleges that Bhaumik pushed the Equitybuild model first to Patel, and then to all of Patel's friends, family, and acquaintances — including Dwyer. (ECF No. 13 ¶ 19.) Bhaumik and Dwyer grew close, spending more and more time together without Patel. (*Id.* ¶¶ 20-21.) In fact, Patel learned about the details of Dwyer's investment in CIM from Bhaumik. (*Id.* ¶ 22.) Before investing, Dwyer met with Bhaumik, Patel, and Shaun Cohen of Equitybuild for dinner to discuss the South Merrill property and Equitybuild's involvement. (*Id.* ¶ 23.) Shaun Cohen is a named defendant in the Receivership Action.

In August 2018, Patel and Bhaumik discovered that Equitybuild was in receivership and was being sued by the SEC. Patel recommended that they immediately notify CI's and CIM's investors, including Dwyer. Bhaumik disagreed. (ECF No. 13 ¶ 24.) Still, Patel retained counsel to secure CI's and CIM's claims in the Receivership Action. (*Id.* ¶ 25.) But when Patel pressed Bhaumik to notify CI's and CIM's investors, Bhaumik tried to seize control of CIM under the pretense that Patel was not bringing in enough investors or being a "good partner." (*Id.* ¶ 27.)

In September 2018, Bhaumik forced Patel to forfeit 10% of his interest in CIM, giving Patel the opportunity to "clawback" the interest if his performance improved. (ECF No. 13 ¶ 28.) In October 2018, Bhaumik forced Patel to forfeit another 10% interest, and in December 2018 another 10%, each time with the same clawback terms. (*Id.* ¶¶ 29-30.) In January 2019, Patel ceded his remaining 10% interest in CIM, having never received compensation for his original 50% interest. (*Id.* ¶¶ 31-32.) After that, Patel's involvement with CIM ended. (*Id.* ¶ 37.)

C.     **Procedural History**

In January 2023, Dwyer sued Bhaumik, Patel, and CIM. (ECF No. 1.) In March, Patel answered the complaint and crossclaimed against Bhaumik and CIM. (ECF No. 13.) In April, Bhaumik and CIM moved to stay or dismiss Dwyer's complaint. (ECF No. 16.) Patel joined the

motion to stay the complaint. (ECF No. 18.) In May, Bhaumik and CIM moved to stay or dismiss certain of Patel's crossclaims. (ECF No. 19.) The motions to stay are based on the stay of litigation built into the Receivership Order in the Receivership Action. Shortly after the motions to stay were filed, the Court ordered Dwyer to show cause why this case should not be stayed based on the Receivership Action. (ECF No. 24.) Dwyer and Patel opposed Bhaumik and CIM's motions, and they replied. (ECF Nos. 25, 26, 27, 28.)

## II.    LEGAL STANDARD

"A United States district court has broad power to stay proceedings." *Mastec Renewables Constr. Co., Inc. v. Mercer Cnty. Improvement Auth.*, Civ. No. 15-1897, 2017 WL 6493141, at *3 (D.N.J. Dec. 19, 2017) (quoting *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at *3 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 141 (3d Cir. 2004) (Smith, J., concurring in part, dissenting in part) (same); *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) (same).

"Courts generally weigh a number of factors in determining whether to grant a stay including: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Mastec Renewables*, 2017 WL

6493141, at *3 (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014)) (internal citations and quotations omitted in *Mastec*).

As to receiverships, courts have "the power to impose a receivership free of interference from other court proceedings" in order to streamline the redistribution of a defendant entity's assets to investors victimized by the entity's violations of securities law. *S.E.C. v. Equitybuild, Inc.*, 2022 WL 20853632, at *2 (N.D. Ill. Mar. 23, 2022) (citation omitted).

### III.    DISCUSSION

Bhaumik and CIM move to stay this action, arguing that it is subject to a litigation stay in the Receivership Order in the Receivership Action. The Receivership Order stays the following proceedings:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) ***any Receivership Assets, wherever located***; (c) ***any of the Receivership Defendants, including subsidiaries and partnerships***; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").
>
> [(ECF No. 16-2 ¶ 32 (emphasis added).)]

The Order further enjoins parties from commencing, continuing, or taking any action in the above-defined "Ancillary Proceedings." (*Id.* ¶ 33.) The Ancillary Proceedings are "stayed in their entirety." (*Id.* ¶ 34.)

The Order also broadly defines the "Receivership Assets" as follows:

> [A]ssets of any and every kind whatsoever, including without limitation all assets described in this Order, that are: (a) owned, controlled, or held, in whole or in part, by or for the benefit of any

9

>of the Receivership Defendants, in whole or in part; (b) in the actual or constructive possession of any of the Receivership Defendants, or other individual or entity acting in concert with any of the Receivership Defendants; (c) held by an agent of any of the Receivership Defendants, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Defendants, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim.
>
>[(ECF No. 16-2 ¶ 3.)]

The Order freezes "Receivership Assets that are on deposit with any financial institutions or other entities." (*Id.* ¶ 3.) The Order lists many "Receivership Defendants," two of which are 6951 S Merrill LLC and 5001 S Drexel LLC. (*Id.* ¶ 1.)

The Defendants argue that this case is an Ancillary Proceeding subject to the Receivership Order for two reasons. First, this case is "inextricably bound up in both Receivership Assets" — that is, the Funds' namesake properties "are or were" owned by 6951 S Merrill LLC and 5001 S Drexel LLC. Second, this case "involves one of the Receivership Defendants," as Dwyer alleges that his investments ultimately landed with Equitybuild. (ECF No. 16-1 at 10.)

In response to this Court's Order to Show Cause following the motions to stay, Dwyer contests that this case is an "Ancillary Proceeding" as defined by the Illinois district court, asserting that this case involves no Receivership Defendants or Assets. (ECF No. 26 at 8-12.) Although Dwyer alleges that Defendants "directed the Funds to invest in [Equitybuild]" in violation of their legal obligations, he rejects that his claims "implicate two kinds of potential Receivership Assets: (i) money received by [Equitybuild] from the Funds; and (ii) the Properties themselves." (*Id.* at 8.) In fact, his "claims do not seek to trace Plaintiff's investment in the Funds and recover the

10

exact dollars and cents that the Funds invested into [Equitybuild]." (*Id.* at 9.) If Dwyer ultimately wins this case, he says, Defendants will owe him damages regardless of the status of Equitybuild's assets. (*Id.*)

Dwyer further argues that the Funds are "different entities" than the S Merrill LLC and S Drexel LLC that Defendants cite, and that he specifically alleges that the Funds "did not purchase the Properties." (*Id.* at 9-10.) Dwyer argues that even if the properties were purchased by Equitybuild or a Receivership Defendant and were therefore "unquestionably Receivership Assets," his claims would be unaffected by the Receivership Order. (*Id.* at 10.) This is because, Dwyer argues, his claims are distinctly based on Defendant's "*inducement* of Plaintiff to invest in the *Funds*" and Defendants' "*failure* to direct the *Funds* to purchase the Properties." (*Id.*) Finally, Dwyer argues that this case does not involve Equitybuild or any Receivership Defendants, because "[Equitybuild] is not a party to this action" and his claims are not "dependent on [Equitybuild's] receivership." (*Id.* at 11.)

The Illinois district court's ruling in *Equitybuild*[7] is instructive for this Court's analysis. There, a loan creditor of Equitybuild moved for relief from the receivership stay from the same court that entered the Receivership Order. *Equitybuild*, 2022 WL 20853632, at *1. The loan creditor asked for this relief so that it could bring a legal malpractice suit against the attorneys who were involved in the loan transaction but were not Receivership Defendants. *Id.* The threshold issue was "whether the stay covers the [creditor's] case." *Id.* at *3. The court found that the receivership stay did apply for two reasons. First, the Receivership Order's plain language, which applies to any litigation "involving . . . any of the Receivership Defendants' . . . agents . . . sued for, or in connection with, any action taken by them while acting in such capacity," necessarily

---

[7]   2022 WL 20853632 (N.D. Ill. Mar. 23, 2022).

covers the Receivership Defendants' agents, such as the loan-transaction attorneys. *Id.* Second, the Receiver's claim against the law firm would potentially be paid out of the same insurance policy as the creditor's claim, which could render the Receivership Assets insufficient "to fully compensate the Receivership Defendants' secured creditors and the many victims of the Cohens' fraud." *Id.*

The *Equitybuild* court's further analysis underlying its decision not to lift the receivership stay is also instructive, even though no party has moved this Court to lift the receivership stay. When asked to lift litigation stays in securities receivership cases, courts generally employ a three-part test weighing the "*Wencke* factors."[8]  In *Equitybuild*, the court found that the *Wencke* test weighed against lifting the stay and thus the loan creditor's case could not proceed. 2022 WL 20853632, at *3-5. On the first *Wencke* factor, the court wrote that "the stay maintains the status quo because it allows the Receiver to focus his attention on collecting and managing the assets of a large number of Equitybuild entities . . . in order to maximize the available funds for the Equitybuild victims' redress." *Id.* at *3. The court also found that the loan creditor's only injury was being "forced to wait until the receivership winds up in order to file its lawsuit." *Id.* at *4. As to the second factor, the court found that "no distributions had yet been made"; that the Receiver was "still devoting substantial time and effort to collecting assets, tracking claims, and constructing a fair claims process"; and that the pace of activity in the docket illustrated that there were "many

---

[8]      These factors, developed in *S.E.C. v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980) ("*Wencke I*"), and *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"), are "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Equitybuild*, 2022 WL 20853632, at *2.

factual and legal issues yet to be resolved in the receivership." *Id.* at *5.  Thus, the first two *Wencke* factors favored leaving the receivership stay in place.[9]

Considering the Illinois district court's analysis, this Court will determine the scope of the receivership stay order and whether it covers this case.[10]

This Court finds that Dwyer's claims fall under the plain language of the Receivership Order and that the stay of litigation must apply to this action.  Dwyer's own pleadings support this finding, as he alleges that "[a]fter inducing Plaintiff to invest, Defendants then . . . secretly funneled Plaintiff's investment into Equitybuild . . . [an entity] that is currently being sued by the U.S. Securities and Exchange Commission."  (ECF No. 1 ¶ 2.)  Further, Dwyer's claim for fraudulent inducement is premised on his allegation that CIM "never intended" to follow Dwyer's directions for his investments and instead "intended from the outset to have the Funds invest in [Equitybuild]."  (*Id.* ¶¶ 62-63.)  If Dwyer's own allegations are true, his investments are, in the Receivership Order's words, "owned, controlled, or held, in whole or in part, by . . . any of the Receivership Defendants," and "in the actual or constructive possession of any of the Receivership Defendants."  (ECF No. 16-2 ¶ 3.)

Dwyer argues that money is inherently fungible and that he does not intend to track his assets' path to Equitybuild.  (ECF No. 26 at 8-9.)  Even so, that changes neither (i) the broad language of the Receivership Order nor (ii) the fact that this action, by Dwyer's own allegations,

---

[9] Because the loan creditor did not meet its burden on the first two *Wencke* factors, the court found it unnecessary to weigh the third *Wencke* factor, the merits of the moving party's underlying claim.  *Equitybuild*, 2022 WL 20853632, at *5.

[10] Dwyer implies that the Court is restricted in what factual matter it can consider in ruling on the motion to stay, citing the standard described in *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  That restricting standard applies to rulings on motions to dismiss.  The Court is not so restricted for stay motions.

13

"involves" Receivership Assets. (*Id.*) This is particularly true considering the goal of a receivership and related stay of litigation to "streamline the redistribution of a defendant entity's assets to investors victimized by the entity's violations of securities law." *Equitybuild*, 2022 WL 20853632, at *2. Any factfinding regarding Dwyer's assets and how they found their way to Equitybuild would almost certainly relate to the Receivership Action, risking duplicative litigation.[11] And although the Court need not analyze the *Wencke* factors here, the *Equitybuild* court's finding that "there are many factual and legal issues yet to be resolved in the receivership," 2022 WL 20853632, at *5, bolsters this Court's decision. Indeed, the receivership stay of litigation was issued to avoid parallel litigation's muddying those unresolved issues.

In addition, the Moving Defendants argue that the Receivership Order applies because "the two parcels of real estate are Receivership Assets because they were assets of 6951 S Merrill LLC and 5001 S Drexel LLC, which are both defined in the Stay Order as Receivership Defendants." (ECF No. 28 at 6.) On the current record, it is unclear if a direct relationship between the Funds and the two Receivership Defendant-LLCs exists. But a direct relationship is not necessary to fall within the Receivership Order's broad language. In fact, according to Patel's allegations and the Receivership Action's docket filings, the South Merrill Fund (allegedly operating as CI) and the South Drexel Fund are creditors in the Equitybuild action, represented by the same attorneys representing Bhaumik and CIM here. (*Equitybuild*, Civ. No. 18-5587 (N.D. Ill.), ECF Nos. 208,

---

[11] Though the Court need not flesh out the involvement of the Receivership Defendants for it to find that this case is subject to the receivership stay, it finds noteworthy Patel's allegation that "[p]rior to making any investments, Plaintiff met directly with the principal of Equitybuild, Shaun Cohen, along with Defendant Patel and Defendant Bhaumik, at a dinner in New York where Equitybuild and its investment model was discussed." (Patel's Answer, ECF No. 13 ¶ 2.) Bhaumik and CIM did not address that allegation in their pleadings, nor did Dwyer respond to it in his opposition.

209, 210, 263, 1149, 1560.)  To be sure, this Court cannot determine the Funds' relationship to the LLCs that may have owned their namesake properties.[12]  Still, the Funds' involvement in the Receivership Action further supports that Dwyer's claims are within the Receivership Order's broad definition of Ancillary Proceedings.

Likewise, that Patel's crossclaims implicate the Receivership Defendants and Assets also supports that this case is subject to the receivership stay.  In essence, Patel's fraud claims stem from Bhaumik's allegedly inducing Patel to invest in Equitybuild through CI.  (ECF No. 13 ¶¶ 7-9.)  Indeed, Patel's investment of his personal funds in Equitybuild, allegedly at the behest of Bhaumik, are at the heart of his crossclaims for fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation.  Further, Patel's crossclaim for negligent misrepresentation (Crossclaim Two) relies on the allegation that "Bhaumik omitted disclosing any information or detail regarding his actual involvement with Equitybuild, and/or any financial arrangement he individually had with Equitybuild and/or its principals."  (*Id.* ¶ 53.)

The funds that form the basis of Patel's crossclaims are facially part of the Equitybuild assets.  They were allegedly invested due to Bhaumik's pitches as to Equitybuild's business model, likely rate of return, and success.  Patel, through CI, secured a note on the Juneway property, which seemingly is uncontestably a Receivership Asset.  (*Equitybuild*, Civ. No. 18-5587 (N.D. Ill.), ECF No. 1560.)  And Patel alleges that his fallout with Bhaumik and ultimate loss of CIM ownership flowed from Bhaumik's refusal to inform investors of the Equitybuild receivership.  Though the Court makes no finding as to the plausibility of Patel's allegations, it must find that Crossclaims Three and Four also "involve" Equitybuild and its assets.  In sum, because Patel's crossclaims

---

[12]   That issue should be directed to the Illinois district court, which is better positioned to assess Dwyer's investments' relationship to the Receivership Action.

"involve" Receivership Defendants and Assets, as the Illinois district court broadly defined those terms, they too are subject to the Receivership Order's litigation stay.

Therefore, this case is subject to the Receivership Order and is stayed pending the Receivership Action's resolution or the Illinois district court's granting Dwyer relief from the receivership stay as to the claims in this action.

## IV.   CONCLUSION

For the reasons set forth above, and other good cause shown, Bhaumik and CIM's motions to stay Dwyer's claims and Patel's crossclaims (ECF Nos. 16 & 19) are **GRANTED**.  The alternative motions to dismiss are moot and thus **DENIED** without prejudice.  An appropriate Order follows.

Dated: December 29, 2023

*s/Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**